# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,        ) | |
|     Plaintiff,        ) | |
| v.        ) | Case No. 2:19-CR-20229-JTF |
| DEREK DAVENPORT,        ) | |
|     Defendant.        ) | |

## ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO DENY DEFENDANT'S MOTION TO SUPPRESS

Before the Court is Defendant Derek Davenport's Motion to Suppress, filed on June 29, 2020. (ECF No. 47.) The United States of America filed its Response to Defendant's Motion to Suppress on July 27, 2020. (ECF No. 56.) The United States of America also filed a Supplemental Response to Defendant's Motion on September 16, 2020. (ECF No. 61.) The Motion was referred to the Magistrate Judge on July 14, 2020, who held a hearing on the matter on September 16, 2020. (ECF Nos. 52 & 62.) On October 29, 2020, the Magistrate Judge issued a Report and Recommendation denying Defendant's Motion. (ECF No. 67.) Defendant did not file any Objections to the Magistrate Judge's Report and Recommendation.

For the following reasons, the Court **ADOPTS** the Magistrate's Report and Recommendation and **DENIES** Defendant's Motion to Suppress.

## FINDINGS OF FACT

In his Report and Recommendation, Magistrate Judge Pham sets forth proposed findings of fact based on evidence presented during the September 16, 2020 suppression hearing. (ECF Nos. 62 & 67, 1.) The Court adopts and incorporates those proposed findings of fact.

1

**LEGAL STANDARD**

Congress passed 28 U.S.C. § 636(b) "to relieve some of the burden on the federal courts by permitting the assignment of certain district court duties to magistrates." *United States v. Curtis*, 237 F.3d 598, 602 (6th Cir. 2001). Pursuant to the provision, magistrate judges may hear and determine any pretrial matter pending before the Court, except various dispositive motions. 28 U.S.C. § 636(b)(1)(A). Regarding those excepted dispositive motions, magistrate judges may still hear and submit to the district court proposed findings of fact and recommendations for disposition. 28 U.S.C. § 636(b)(1)(B). Upon hearing a pending matter, "[T]he magistrate judge must enter a recommended disposition, including, if appropriate, proposed findings of fact." Fed. R. Civ. P. 72(b)(1); *see also Baker v. Peterson*, 67 F. App'x 308, 310 (6th Cir. 2003). Any party who disagrees with a magistrate's proposed findings and recommendation may file written objections to the report and recommendation. Fed. R. Civ. P. 72(b)(2).

The standard of review that is applied by the district court depends on the nature of the matter considered by the magistrate judge. *See Baker v. Peterson*, 67 F. App'x 308, 310 (6th Cir. 2003) (citations omitted) ("A district court normally applies a 'clearly erroneous or contrary to law' standard of review for nondispositive preliminary measures. A district court must review dispositive motions under the *de novo* standard."). Motions to suppress evidence are among the motions in criminal cases that are subject to *de novo* review. *See* 28 U.S.C. § 636 (b)(1)(A); *U.S. Fid. & Guarantee Co. v. Thomas Solvent Co.,* 955 F.2d 1085, 1088 (6th Cir. 1992). Upon review of the evidence, the district court may accept, reject, or modify the proposed findings or recommendations of the magistrate judge. *Brown v. Bd. of Educ.*, 47 F. Supp. 3d 665, 674 (W.D. Tenn. 2014); *see also* 28 U.S.C. § 636(b)(1). The court "may also receive further evidence or recommit the matter to the [m]agistrate [j]udge with instructions." *Moses v. Gardner*, No. 2:14-

cv-2706-SHL-dkv, 2015 U.S. Dist. LEXIS 29701, at *3 (W.D. Tenn. Mar. 11, 2015).  A district judge should adopt the findings and rulings of the magistrate judge to which no specific objection is filed.  *Brown*, 47 F. Supp. 3d at 674.  "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations."  Fed. R. Civ. P. 72(b)(2).  "When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  Fed. R. Civ. P. 72(b) advisory committee notes.

## ANALYSIS

Because Defendant has not filed Objections to the Magistrate Judge's recommendation that the Motion to Suppress be denied, the Court reviews the Magistrate Judge's Report and Recommendation for clear error.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b) advisory committee notes.  The issue presented by Defendant's Motion is whether the police search of 587 Leacrest Avenue ("the Leacrest residence") on April 10, 2019 violated Defendant's Fourth Amendment right to be free from unreasonable searches and seizures.  (ECF No. 47, 1–2.) Defendant contends that all evidence obtained during the search should be suppressed under the Fourth Amendment.  (*Id.* at 1.)  Defendant first argues that he has the right to challenge the consent of Antionette Tennial, who resides at the Leacrest residence and is Defendant's ex-girlfriend.  (*Id.* at 4.)  Defendant then argues that Tennial's consent to the search was invalid for two primary reasons.  First, Defendant posits, Tennial's consent was the product of police coercion.  (*Id.* at 5.) Second, the search consent form that Tennial signed was presented only after the search of the Leacrest residence had begun.  (*Id.*)  The Magistrate Judge recommends the denial of Defendant's Motion to Suppress because "Davenport did not have a reasonable expectation of privacy in the Leacrest home and thus cannot challenge the search on Fourth Amendment grounds."  (ECF No.

67, 9.)  The Magistrate Judge also found that even if Defendant had established the right to challenge the search, "the search was otherwise valid because the officers obtained Tennial's consent to conduct their search." (*Id.*)  This Court agrees.

### *Legitimate Expectation of Privacy in the Leacrest Residence*

The Fourth Amendment of the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ."  U.S. CONST. amend. IV.  As the Magistrate Judge noted, "[b]ecause Fourth Amendment rights are 'personal,' the central inquiry in any suppression hearing is whether the defendant challenging the admission of evidence has shown a legitimate expectation of privacy in the place searched or the thing seized." *United States v. Adams*, 583 F.3d 457, 463 (6th Cir. 2009) (quoting *United States v. King*, 227 F.3d 732, 743 (6th Cir. 2000)) (citation omitted).  Determining whether Defendant had a legitimate expectation of privacy in the Leacrest residence requires a two-part inquiry.  First, the Court must determine whether Defendant had an actual, subjective expectation of privacy.  *See King*, 227 F.3d at 743.  Second, Defendant's expectation of privacy must be "one that society is prepared to recognize as reasonable." *United States v. Waller*, 426 F.3d 838, 844 (6th Cir. 2005) (quoting *King*, 227 F.3d at 743).  Overall, in order to challenge Tennial's consent, Defendant must show, by a preponderance of the evidence, a legitimate expectation of privacy in the Leacrest residence.  *See United States v. Shelton*, 384 F. Supp. 3d 916, 923–24 (M.D. Tenn. 2019) (citing *United States v. Ponder*, 240 F. App'x 17, 19 (6th Cir. 2007)).

### *Defendant's Actual, Subjective Expectation of Privacy*

The first prong in determining whether Defendant had a legitimate expectation of privacy requires that this Court "ask whether the individual, by conduct, has exhibited an actual

expectation of privacy; that is, whether he has shown that he sought to preserve something as private." *King*, 227 F.3d at 743–44 (citing *Bond v. United States*, 529 U.S. 334, 338 (2000)). The Magistrate Judge did not expressly address whether Defendant had a subjective, actual expectation of privacy. (ECF No. 67, 8–9.)

Based on the narrative provided in the Memphis Police Incident Report, the police officers in this case found cash, drugs, and related paraphernalia scattered across the Leacrest residence, with some items being found in the kitchen, closets, a pair of pants in the bedroom, and under a mattress. (ECF No. 47-1, 9.) Because some of the items were found in closets, pants pockets, and under a mattress, the Court will assume for purposes of this analysis that Defendant evinced an actual expectation of privacy by seeking to preserve some things as private. *King*, 227 F.3d at 743–44.

*Objective Reasonableness of Defendant's Expectation of Privacy*

Assuming Defendant exhibited a subjective, actual expectation of privacy in the Leacrest residence, it would not be one that society is prepared to recognize as reasonable. The Magistrate Judge determined that Defendant did not have a reasonable expectation of privacy at the Leacrest residence. (ECF No. 67, 8–9.) The Magistrate Judge noted that Defendant did not reside at the home, had not slept there the previous night, and did not appear to keep personal items or clothes there. (*Id.*) Further, Tennial's testimony indicated that Defendant was not a regular visitor to the home and did not have any authority or permission to enter or exit the home at his leisure. (*Id.* at 9.)

Being an overnight guest is sufficient to establish a person's Fourth Amendment protections in a place. *See United States v. Allen*, 720 F. App'x 254, 257 (6th Cir. 2018) ("[T]his court has broadly interpreted the Fourth Amendment to protect nearly all overnight guests,

5

clarifying that these Fourth Amendment protections extend to those who occupy common areas in an apartment that are freely accessible to others.") (citing *United States v. Pollard*, 215 F.3d 643, 647–48 (6th Cir. 2000)). Defendant contends, without evidence, that he was an overnight guest at the Leacrest residence the night prior to the search. (ECF No. 47, 4.) However, the Magistrate Judge found, after a hearing, that Defendant "had not slept at the house the night before the search" and instead "had arrived at the house earlier that morning to pick up his daughter for school." (ECF No. 67, 8.) To the extent that there is evidence that Defendant was an overnight guest—that it was early in the morning and that Defendant was in his underwear in a bedroom—it is limited and purely circumstantial. (*Id.* at 3.) Therefore, the Court concludes that Defendant may not rely on any assertion of status as an overnight guest to support the argument that he had a legitimate expectation of privacy. *See United States v. Berryhill*, 352 F.3d 315, 317 (6th Cir. 2013) ("[Defendant] lacked any of the items one would expect an overnight guest to have with him. He carried no clothes or toothbrush . . . .").

Defendant notes in his Motion to Suppress, and it is true, that the right to challenge a search may extend to non-overnight guests in a home. *See United States v. Washington*, 573 F.3d 279, 283 (6th Cir. 2009) ("In certain cases, this circuit has even extended standing to challenge a search to non-overnight guests who are permitted to keep items in the residence.") (citing *Waller*, 426 F.3d at 844). However, this case is distinguishable from cases finding a legitimate expectation of privacy for a non-overnight guest to contest a search. For example, in *Waller*, the defendant was "transient" and used a third-party's apartment "primarily for showering, changing clothes, and storing his personal belongings." *Waller*, 426 F.3d at 844. The Magistrate Judge found and noted that "Tennial testified that [Defendant] was not regularly around her home and that her relationship with [Defendant] ended long before" the day of the search. (ECF No. 67, 9.) In fact, there is no

evidence that Defendant had even spent time at the Leacrest residence before the day of the search or that he had permission to keep items there.

Because Defendant's guest status is alone insufficient to establish a legitimate expectation of privacy, the Court will consider Defendant's "proprietary or possessory interest" in the Leacrest residence; whether he "has the right to exclude others from the place in question; whether he had taken normal precautions to maintain his privacy; whether he has exhibited a subjective expectation that the area would remain free from governmental intrusion; and whether he was legitimately on the premises." *Waller*, 426 F.3d at 844 (quoting *King*, 227 F.3d at 744). It is clear that since Defendant did not live at the Leacrest residence and was not regularly, if ever, around the home, he has no proprietary or possessory interest therein. Similarly, Defendant's Motion provides no evidence to support a finding that Defendant expected freedom from governmental intrusion in the Leacrest residence. While Defendant was legitimately on the premises, there was no evidence that he had the right to exclude others or that he had taken affirmative steps to establish or maintain any privacy in the home. *See id.*

Accordingly, the Court agrees with the Magistrate Judge's recommendation that Defendant did not have a legitimate expectation of privacy in the Leacrest residence, and thus does not have the right to contest Tennial's consent to the search.

### *Consent Exception to Fourth Amendment's Warrant Requirement*

While the Magistrate Judge concluded, and this Court agrees, that Defendant did not have a legitimate expectation of privacy, and thus did not have the right to challenge the search of the Leacrest home, the Magistrate Judge determined that even if Defendant could establish a legitimate expectation of privacy, there had been a valid consent search. (ECF No. 67, 9.) Accordingly, this

7

Court proceeds to analyze—assuming, *arguendo*, that Defendant had a legitimate expectation of privacy—whether the search is valid through Tennial's consent.

Warrantless police entry into a home is "presumptively unconstitutional." *Ewolski v. City of Brunswick*, 287 F.3d 492, 501 (6th Cir. 2002) (citing *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 996 (6th Cir. 1994)). However, consent to a search is an "established exception[] to the requirements of both a warrant and probable cause." *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (citing *Davis v. United States*, 328 U.S. 582, 593–94 (1946)). "The government bears the burden of proving, through 'clear and positive testimony' that the consent to search was given voluntarily." *United States v. Beauchamp*, 659 F.3d 560, 571 (6th Cir. 2011) (quoting *United States v. Salvo*, 133 F.3d 943, 953 (6th Cir. 1998)). The government must demonstrate voluntariness by a preponderance of the evidence. *See United States v. Williams*, No. 10-20357-STA-tmp, 2013 U.S. Dist. LEXIS 10051, at *16 (W.D. Tenn. Jan. 25, 2013) (quoting *United States v. Canipe*, 569 F.3d 597, 602 (6th Cir. 2009)). However, where the defendant alleges coercion, he "must show more than a subjective belief of coercion, but also some objectively improper action on the part of the police." *See United States v. Crowder*, 62 F.3d 782, 787 (6th Cir. 1995). The Sixth Circuit has held that "[c]onsent is voluntary when it is 'unequivocal, specific and intelligently given, uncontaminated by any duress or coercion.'" *United States v. Moon*, 513 F.3d 527, 537 (6th Cir. 2008) (citing *United States v. McCaleb*, 552 F.2d 717, 721 (6th Cir. 1977)). "Mere acquiescence" is insufficient to show "free and voluntary consent." *See id.* at 538 (citing *Bumper v. North Carolina*, 391 U.S. 543, 548–49 (1968)). Voluntariness is a factual question that must be "determined from all the circumstances." *Ohio v. Robinette*, 519 U.S. 33, 40 (1996) (quoting *Florida v. Jimeno*, 500 U.S. 248, 248–49 (1991)).

In assessing whether Tennial's consent was voluntary, the Court considers: Tennial's age, intelligence, and education; whether Tennial understood that she could refuse consent; the "length and nature" of Tennial's detention; whether there was "coercive or punishing" police conduct; and whether there are "indications of 'more subtle forms of coercion that might flaw'" Tennial's judgment. *See United States v. Cochrane*, 702 F.3d 334, 342 (6th Cir. 2012) (citations omitted). No individual consideration is dispositive. *See United States v. Lucas*, 640 F.3d 168, 174 (6th Cir. 2011) (citing *Schneckloth*, 412 U.S. at 226).

The circumstances surrounding the purported consent were disputed between Defendant's Motion and the testimony of Tennial and the police officers. The Magistrate Judge found Tennial's testimony to be not credible, and accordingly, the Magistrate Judge did not agree with Defendant's characterization of the facts. (ECF No. 67, 1–2.) Defendant contends that the government cannot show that Tennial's consent was valid. (ECF No. 47, 5.) First, Defendant argues, the police officers were already inside the Leacrest residence before receiving consent. (*Id.*) Second, the search began *before* Tennial signed the consent form. (*Id.*) Third, before Tennial gave any consent, Tennial asked officers to cease searching the Leacrest residence, which the officers refused to do. (*Id.*) Finally, Defendant states that the officers threatened Tennial by stating that they would call Child Protective Services if Tennial refused to give consent and allow further search of the Leacrest residence. (*Id.*) However, the Magistrate Judge found that Tennial provided verbal consent for the officers to search the Leacrest residence, and that subsequently, Tennial signed a consent form after an officer read her its terms. (ECF No. 67, 4.) The Magistrate Judge also indicated that:

> Tennial testified that the officers never asked for her consent to search the house, that she repeatedly told them they did not have permission to conduct a search, and that while she eventually signed the consent form, she did so only because the officers had their guns drawn and they threatened to contact Child Protective

9

>Services to take her child away.  The undersigned finds her testimony to be not credible.

(*Id.* at 5 n.3.)

While the Magistrate Judge did not expressly indicate the rationale for this determination of credibility, Defendant has not filed any Objections in this case. Mindful that this Court "should adopt the findings and rulings of the Magistrate Judge to which no specific objection is filed," the analysis proceeds based on the Magistrate Judge's findings of fact. *See Brown*, 47 F. Supp. 3d at 674 (citing *Thomas v. Arn*, 474 U.S. 140, 151 (1985)).

In support of the proposition that the consent form cannot validate the search, Defendant cites *United States v. Chambers*, 395 F.3d 563, 569–70 (6th Cir. 2005), *abrogated on other grounds by Kentucky v. King*, 563 U.S. 452, 466 (2011).[1]  (ECF No. 47, 5–6.) However, in *Chambers*, the police made an illegal entry into the home and the defendant gave consent while he was detained.  395 F.3d at 569.  Further, the defendant testified that he believed he was "under arrest" when he gave consent.  *Id.* at 570.  The *Chambers* Court also found that the environment surrounding the consent was "highly coercive."  *Id.*  Ultimately, *Chambers* is inapplicable to this case because here, consent was not given after an illegal entry into the Leacrest residence.  *See United States v. Twitty*, No. 08-20345, 2009 U.S. Dist. LEXIS 72089, at *7–8 (W.D. Tenn. Aug. 14, 2009) (holding *Chambers* inapplicable where there was no illegal entry).  The Magistrate Judge found that after the officers informed Tennial that they sought Davenport, "Tennial confirmed that Davenport was in the house, at which point the officers walked inside."  (ECF No. 67, 2–3.)  Consent "may be in the form of words, gesture, or conduct."  *Smith v. City of Wyoming*, 821 F.3d 697, 710 (6th Cir. 2016) (quoting *United States v. Carter*, 378 F.3d 584, 587 (6th Cir. 2004)).

---

[1] Defendant also cites the non-binding cases of *United States v. Matthews*, No. CR 05-10073-NG, 2006 U.S. Dist. LEXIS 7701, at *5–7 (D. Mass. Mar. 1, 2006) and *United States v. Johnson*, No. 12-cr-291, 2012 U.S. Dist. LEXIS 155710, at *22 (E.D. Pa. Oct. 31, 2012).

In light of Tennial's confirmation that Davenport was inside the Leacrest residence, and in the absence of a finding that Tennial objected to entry, the police entry cannot be said to be illegal so as to contaminate Tennial's subsequent consent to the search. Additionally, the government need not rely on the signed consent form to uphold the search, as Tennial had already given verbal consent to the search, which as explained below, was valid. (ECF No. 67, 4.) There is no evidence that Tennial merely acquiesced to officers' request for consent or that Tennial viewed refusing consent as futile. *See Moon*, 513 F.3d at 538 ("[I]t does not appear from the record that Defendant's statement to government officials was 'an expression of futility in resistance to authority or acquiescing in the officers' request.'" (quoting *United States v. Worley*, 193 F.3d 380, 386 (6th Cir. 1999))).

Defendant's Motion also cites *United States v. Finch*, 998 F.2d 349, 356 (6th Cir. 1993) in support of his argument that any consent given by Tennial was coerced. (ECF No. 47, 6.) However, *Finch* is distinguishable because the defendant gave consent while detained and after five police broke down the door with guns drawn. *Finch*, 998 F.2d at 356. While officers in this case drew their guns on Defendant to arrest him in the Leacrest residence, they did such after a lawful entry to arrest Defendant. Further, officers had not stormed into the house as in *Finch*, and guns were never drawn on Tennial.

As the Magistrate Judge noted in his analysis, Tennial is an adult with some college education. The length of her detention, if any, was limited to a brief discussion with officers at the Leacrest residence. Further, the Magistrate Judge found the officers made Tennial aware of her right to refuse consent. (ECF No. 67, 11.) There is no evidence that the police engaged in coercive or "punishing conduct" beyond the lawful arrest of Defendant, to whom Tennial is not related. (*Id.* at 9.) While Tennial testified that the officers threatened to call Child Protective

Services, the Magistrate Judge found otherwise, and Defendant has not objected to this finding. (*Id.* at 5 n.3.) Additionally, four officers testified to this effect. (*Id.* at 11.) Considering the totality of the circumstances, the government has met its burden to show through "clear and positive testimony" that Tennial consented to a search of the Leacrest residence. *Beauchamp*, 659 F.3d at 571.

## **CONCLUSION**

Upon review, the Court hereby **ADOPTS** the Magistrate Judge's Report and Recommendation to **DENY** Defendant's Motion to Suppress.

**IT IS SO ORDERED** on this 28th day of December, 2020.

*s/John T. Fowlkes, Jr.*
John T. Fowlkes, Jr.
United States District Judge